Tillile, Appellant, *v.* Konkle.

Argued October 5, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*George S. Goldstein,* with him *Thomas R. Eddy,* and *Morris F. Cohen,* for appellant.

*Bruce R. Martin,* with him *Dalzell, Pringle, Bredin & Martin,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, January 3, 1956:

In this action of trespass for personal injuries the jury rendered a verdict for defendant, and plaintiff appeals from the refusal of his motion for a new trial.

Defendant had contracted for, and had begun to erect for Disco Corporation, three buildings on Disco's premises in Fayette Township, Allegheny County. The contract provided that he perform all except electric and concrete work. Disco was to exercise no control but reserved the right of inspection to assure compliance with plans and specifications.

Under separate contract, Patterson-Emerson-Comstock, Inc., plaintiff's employer, undertook to supply all of the electrical work. Defendant was not a party to this contract nor did he have any control over the electrical contractor or its work.

On the day in question, one of the buildings having been sufficiently, though not fully, constructed to permit electrical work, the plaintiff and fellow employes commenced this part of the operation. Beneath and parallel with the roof was a chute for the conveyance of hot coke. Between this chute and the roof, running across the chute, was a catwalk, approximately eighty-seven feet long and three feet wide, from which employes of Disco would process the coke. The floor of this catwalk was steel grating which rested on steel beams forming part of the basic structure of the building. On either side of the catwalk was a steel railing which consisted of solid steel rods supported by upright steel posts. The latter were welded to the floor of the catwalk and spaced at approximately ten foot intervals along the entire length. The posts had holes, an inch in diameter, placed near the top and middle, through which ran the steel rods. Some of the rods would be welded to the posts where they entered the hole, while others would be welded beyond the holes at points

where they joined with other rods. Some were not yet welded together.

To perform their work, plaintiff and his fellow-employes constructed a scaffold atop the rails of the catwalk, upon which they stood to install fixtures in the roof. Defendant had no knowledge or notice that the railing was to be used as a support for the scaffold. The evidence is that no one made any attempt to inspect the rods to determine whether they were secure, except that they looked at it and thought it safe, and that they tested the scaffold and decided it to be secure. It was established that the work on the catwalk had not been completed by defendant and that ordinary inspection of the rods would have revealed that they had not yet been welded. Defendant's testimony was to the effect that anyone "could see it wasn't finished."

While plaintiff was on the scaffold, one of the unwelded rods pulled away from the hole, the scaffold collapsed and plaintiff fell some 15 feet into the chute and was injured.

Plaintiff contends that: (1) the court failed properly to "instruct the jury on the status of all the parties involved . . . and the duties owed by the appellee to the appellant"; (2) "When the jury submitted written questions to the Court inquiring into the contracts between the owner of the premises and the appellee and appellant's employer . . . the Court should have instructed the jury that they were only concerned with the question of negligence of the appellee, the duties owed the appellant, and the contributory negligence, if any, of the appellant, and that those issues did not arise as a result of the contracts between the parties."

Plaintiff's first contention is that the court failed to charge the jury that defendant occupied the same position, with its attendant duties, as the owner of the premises and was subject to the same liability for neg-

ligence; that it failed to instruct the jury to the effect that plaintiff, as to defendant, was a *business visitor* and was owed the same duty of care. But the court had charged that " 'It is the duty of independent contractors engaged about the same general work to use ordinary care and diligence in the conduct of their several works so as not to expose servants or the other employees to danger' . . . But if the defendant knew they [plaintiff and his fellow-employes] were coming in there, and saw them there and failed to take any precautions when he saw they were putting up a barricade, it would be a question for you to determine whether or not that was negligence and the conduct any reasonably prudent person would be expected to act upon." Upon completion of its charge the court asked counsel whether there were any suggestions, and no attack was made by plaintiff upon this aspect of the charge, except that he did except to the refusal of certain of his points for charge. Without enumerating or quoting the points so refused, suffice it to say that they were properly refused. Inherent in each were assumptions of fact which were not sustained by the testimony. We find no error in the charge.

After it had retired to deliberate, the jury presented written questions to the court asking (1) whether plaintiff's employer had its contract with the owner or with defendant; (2) who gave plaintiff's employer authority to start its work on the day of the accident; and (3) whether defendant had "authority to say or give permission" when plaintiff's employer could start to use the building to perform its work. The court answered as to each: (1) "With Disco"; (2) "Their contract was with Disco. The only authority would be under their contract"; (3) "The question you have to decide is Did Konkle [defendant] see these [electrical contractor's] . . . men start the work on the scaffold.

There is no evidence that he gave express authority. At least this is one of the questions. He had no express authority but he could if asked say whether or not the scaffold was sufficiently complete to use but he had no authority to keep Patterson, Emerson & C[omstock] out of the building." The record does not disclose that this was excepted to or that plaintiff asked for any clarification or change. However, he complains that the court's duty was to instruct the jury to the effect that defendant's liability was not to be predicated on contract or authority, but solely on the existence of negligence or contributory negligence. His complaint is that the questions indicated confusion in the minds of the jurors. The record does not sustain him in this regard. The jury was fully instructed as to the basis of liability and of what that liability consisted. In addition, plaintiff himself injected into the case both the contractual rights and authority, and to some extent relied on those questions for his case.

Under all the testimony, the jury was fully warranted in finding no negligence in defendant and, on the other hand, negligence in plaintiff; and the charge was sufficiently instructive and free of error.

Judgment affirmed.